**FORT WORTH & DENVER CITY RY. CO. v. GIFFORD.**

No. 15300.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 3, 1952.

Rehearing Denied Oct. 31, 1952.

Seth Barwise, of Fort Worth, Stanley C. Kirk and H. M. Muse, both of Wichita Falls, for appellant.

Peery & Kouri, and Bob L. Wilson, Allen, Locke & Crampton; and Irvin J. Vogel, all of Wichita Falls, for appellee.

CULVER, Justice.

In our original opinion, 244 S.W.2d 848, we held that appellee Gifford was guilty of contributory negligence as a matter of law and reversed and rendered this cause. The Supreme Court, 249 S.W.2d 190, decided that our holding in that respect was erroneous, that the trial court's judgment should be affirmed, subject to our consideration and decision upon the alleged excessiveness of the verdict, and remanded the case to us for that purpose.

The injuries received by Gifford were numerous and almost fatal. His right ankle was dislocated to the extent that the foot was completely reversed. It was necessary to amputate the left leg just above the knee. His left shoulder was dislocated and the nerves pulled and stretched and some broken. There were numerous fractures of the transverse processes of the lumbar vertebrae, multiple fracture of the pelvis, torn perineum and lacerated bladder, cerebral concussion of the brain and other injuries.

The physician who treated and operated upon this young man was neither in the employ of the railroad company nor retained by the appellee. He happened to be in the hospital when Gifford was brought there and immediately set to work to take care of this emergency.

This doctor, the only medical witness, sums up the disability of the appellee at the time of the trial. The appellee should manage to have reasonably good use of the left leg when an artificial limb has been fitted. The right foot and ankle will be serviceable but he will continue to have some pain and swelling in that joint. He will have more or less constant headaches, from which medication will not give complete relief. The ordeal through which appellee has gone has made him very nervous, which will have a tendency to increase lapses in memory. The left arm and hand are only ten per cent serviceable. The doctor is of the opinion that the appellee is permanently disabled to an extent of from ninety to ninety-five per cent.

The petition prayed for recovery of $5,000 for pain and suffering, $65,000 for loss of earnings, and $2,044.05 doctors' and hospital bills. The jury rendered a verdict for $74,700 for pain and suffering and loss of earning capacity and $2,344.50 for hospital and medical bills. The trial court reduced the recovery to the amount prayed for in plaintiff's petition. Assuming that $5,000 of this recovery was for pain and suffering, as prayed for, then $65,000 was awarded for loss of earning capacity, and appellant asserts that this amount is excessive.

■ The jury verdict must stand unless it is the result of passion, bias, prejudice, sympathy or corruption, and the court has no power to substitute its own judgment for that of the jury. Courts are slow to set aside a verdict that has been approved by the trial court. Wichita Falls & S. R. Co. v. Holbrook, Tex.Civ.App., 50 S.W.2d 428; Texas & N. O. R. Co. v. Coe, Tex.Civ.App., 102 S.W.2d 465.

■ This young man, nineteen years of age at the time of his injury, had an expectancy of some fifty years. His entire mature life was before him. He had

worked part time as an agricultural worker in harvesting and gathering crops and when employed was making approximately $8 a day. He was not trained or skilled in any trade or profession. If the verdict should be based solely on what he was actually earning at the time of his injury and if his total earning capacity should be measured by such standard, the amount allowed by the jury might be excessive. But the jury is not limited to such a standard, particularly in passing upon the earning capacity, and the amount to be allowed therefor, of a young man who has not reached his majority. The jury may take into consideration the probability that his earning capacity would be greater and his skill as a worker would increase as he grew older. The jury, in assessing damages, could logically assume that a nineteen year old boy, in good health and of sound mind, would have earned more in the future than he had in the past. United Fidelity Life Ins. Co. v. Holliday, Tex.Civ. App., 226 S.W.2d 139.

The jury was warranted in taking into consideration the reduced purchasing power of money and that wages have at least doubled in the past ten or fifteen years. Kimbriel Produce Co., Inc., v. Webster, Tex.Civ.App., 185 S.W.2d 198. In the foregoing case, a judgment for $46,000, reduced to $36,000, was granted to a young woman stenographer who had sustained many serious and painful and disfiguring injuries, permanent in their nature but which had not very seriously affected her earning capacity, and the court observed that in all probability she could not work quite as long hours and with as much ease and comfort as she had formerly.

A case cited by appellant in support of its contention that the verdict is excessive is Galveston, H. & S. A. R. Co. v. Andrews, Tex.Civ.App., 291 S.W. 590, decided in February, 1927, passing upon the excessiveness of a verdict awarding $40,000 damages for an accident sustained in 1924. In that case, a remittitur of $10,000 was required, reducing the award to $30,000. The opinion reveals that the only injury was the amputation of plaintiff's leg

eight inches from the hip joint. The shortness of the stump and the protuberance of the bone rendered it very doubtful that an artificial limb could ever be satisfactorily fitted and used. The plaintiff was thirty-five years of age, earning $200 per month. The 1924 dollar, as a matter of common knowledge, is probably worth no more than fifty cents today.

In the case of Thompson, Trustee, v. Barnes, Tex.Civ.App., 236 S.W.2d 656, a verdict of $85,000 was held not excessive where it appeared that the plaintiff had injured his back by pulling on a pin lever in attempting to open a railroad car coupler. In Henwood v. Moore, Tex.Civ.App., 203 S.W.2d 973, an award of $35,000 was reduced to $20,000 where the plaintiff sustained no broken bones, had not lost the total use of his right shoulder and upper right arm, and was not rendered totally incapacitated. There were no visible scars or deformities and the plaintiff had, prior to the accident, been rated forty per cent disabled by the United States Government. There is no formula or standard applicable to cases of this character by which the exact amount of compensation can be measured and ascertained. No two sustain precisely the same injuries or are affected in the same way, and consequently the jury has a rather broad discretion. Kimbriel Produce Co., Inc., v. Webster, supra. Some recent cases passing on this question of excessiveness are: Texas & N. O. R. Co., v. Haney, Tex.Civ.App., 144 S.W.2d 677; Alpine Telephone Corp. v. McCall, Tex. Civ.App., 195 S.W.2d 585; Pure Oil Co. v. Crabb, Tex.Civ.App., 151 S.W.2d 962; Texas & N. O. R. Co. v. Coogler, Tex.Civ. App., 209 S.W.2d 778.

We are of the opinion that, under all of the facts and circumstances, for us to hold that this verdict is excessive would be in the nature of substituting our judgment for that of the jury. While this verdict might be more than this court would have awarded if we had been triers of the facts, nevertheless we are unable to say that the verdict, though large, shows of itself any bias, any prejudice or passion, or that it is not supported by the evidence

which we must view most favorably toward the injured individual.

We, therefore, overrule appellant's contention that the verdict is excessive. All other issues having been determined in appellee's favor by the Supreme Court and conforming to that decision, the judgment of the trial court is in all things affirmed.